1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

2

3 KAREN MCBRIEN
3616 Far West Blvd.
4 #117-252
Austin, TX 78731
5 (512) 586-8978

CIVIL ACTION NO. 3:09-cv-00167-TMB

6          PLAINTIFF,



7     vs.

AUG 1 0 2009

8 UNITED STATES
AND DOES 1-100,

CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

9

10          Defendants

11 _____

12          **COMPLAINT**

13   **PLAINTIFF'S NOTICE OF FILING FTCA CLAIM**

14

15     Plaintiff Karen W. McBrien intends to file a claim under the FTCA

16 for damages done to her, her minor child, her property, her civil

17 rights, her reputation, and her litigation. Plaintiff files this

action under 28 USC sections 2674, 2679, 2675, 1346, and any other

18 applicable FTCA code sections. Plaintiff also files this action to

19 include her minor child Michelle McBrien, who has also been damaged by

20 the parties in this action.

21     Government employees acting within the scope of their employment

22 who are negligent in a duty to a third party potentially expose the

Government to liability under the FTCA; and liability is independent

23 of the person's employment status. Therefore, if much of this action

24 happened due to Plaintiff's ex-husband, David R. McBrien, his

25 relatives, Plaintiff's brother-in-law, Roger K. Hull of Anchorage, AK

and other relatives, who are federal or federal contractors, Plaintiff

26 feels that it is covered by a FTCA claim.

27

28

PLAINTIFF'S FTCA CLAIM- 1

Plaintiff wishes to add the Cause of Action of Negligent Transmission of a Venereal Disease to this claim, for she feels it is possible now that she was intentionally misled by David McBrien, Roger Hull and other relatives, who knew or should have known that David McBrien was possibly gay or bisexual and had every intention of harming Plaintiff with the exposure from this disease and knew that he intended to conceal it from Plaintiff. The DOD, NCIS, Navy, JAG, or other agencies/entities committed negligence in not having proper control over these employees or contractors, if it turns out that David McBrien, the McBriens, the Fritzes, Roger K. Hull, the Hulls and Welters have all been military employees or contractors. This negligence will cause fear of future disease for Plaintiff and possibly her child.

Plaintiff now feels that her ex-husband only married her to harm her and may have been part of a governmental action against her throughout the marriage, causing things to go wrong for her throughout the marriage, her pregnancies, as well as for her daughter. He and his relatives have made things go wrong for both of them, and have intentionally caused severe infliction of emotional distress. She feels as if she were continuously battered by him and his relatives, and realizes now that he may have never loved her at all from the beginning.

If these acts were done to Plaintiff and her minor child because these relatives were federal agents or contractors, Plaintiff wonders whether that means that they do not have any federal rules applied to them.

Plaintiff and minor child have been knowingly exposed to asbestos, and David McBrien knew the dangers of asbestos, but Plaintiff did not fully know, and was told wrongful information by the State of Texas Health Dept., and not told about it by David McBrien, after she had inquired about the toxic exposure that she and minor child received. None of them told Plaintiff that many times all fibers are not removed from items, even after cleaning. They received their exposure to asbestos from a roofer falling through the ceiling of only their apartment, while installing a new roof and surveillance system.

PLAINTIFF'S FTCA CLAIM- 2

It resulted in the loss of all of their belongings, because, as Plaintiff learned later, not all asbestos is removed, even after it is cleaned.

The Causes of Action are: Intentional Infliction of Emotional Distress; Personal Injury; Toxic Asbestos Exposure, Product/Premises Liability; Interference with a Prospective Economic Advantage, with the parties named herein intending to cause financial damage to Plaintiff and to drive her to bankruptcy, homelessness, and have her live in poverty; Defamation/Slander, with parties accusing Plaintiff of being someone that she has never been before; denial of Due Process; ADA discrimination; Civil Rights Violations; 42 USC 1983 law enforcement misconduct and civil rights violations, involving lack of privacy; disclosure of private health information; unreasonable search and seizure of legal documents; car tampering; food and drink tampering; unlawful detainer; threats of harm or arrest; lack of access to counsel; and preclusion from any and all assistance. Other Causes of Action are for Denial of the Right to Pursue Happiness; Negligent Transmission of a Venereal Disease; Intentional Interference with Reproductive Rights; Denial of Right to Freedom; Medical Malpractice; Lack of Human Subject Research Protection; Interference in the Parent-Child Relationship; Violation of Fourth, Eighth Amendments to US Constitution; Interference so as to Cause a Spoilage of Evidence; Interference with Telecommunications; Interference with Mail; Interference with Child Custody; Civil Conspiracy; Interference from Use of Medical Devices and Drugs without knowledge or consent; Enrollment of Patient in Study without knowledge or consent; Securities Fraud; Identity Theft; and other causes of action, to be named later.

US DEFENDANTS

Defendants FBI; Robert Mueller; DHS; Janet Napolitano; CIA; Leon Panetta; CIA OIG; Helgerson; TSA; US Marshals; DOJ; Eric Holder; US Attorney's Office; Gil Kerlikowske; DEA; White House Office of Counsel; President Obama and Vice President Biden of White House; Former President George Bush and Vice President Dick Cheney; Former

President Clinton and VP Al Gore; Secret Service; NSA; Office of
National Intelligence; Dept. of State; Hillary Clinton; DOD; Robert
Gates; US Navy; Michael Mullin; US Army; JAG; IRS; Department of the
Treasury; Timothy Geitner; ATF; NCIS; Amtrak; Amtrak police; Amtrak
OIG; Air Marshals; Federal Railroad Administration; National Forestry
Service; National Science Foundation; National Institutes of Health;
Office of Naval Research; Dept. of Transportation; Raymond LaHood;
Dept. Veteran's Affairs; Shinseki; Dept. of the Interior; Ken Salazar;
EPA: HHS; Kathleen Sebelius; Dept. of Energy; Steven Chu; Dept. of
Education; Dept. of Children and Families; USPS; Dept. of Commerce;
Gary Locke; Dept. of Labor; Hilda Solis; Federal Highway
Administration; FAA; the airports and their federal security directors
at SFO, Austin, TX, Houston, TX, Dallas, TX, Dallas-Love Field,
Denver, CO, Phoenix, AZ, Fresno, CA, San Diego, CA, Sacramento, CA,
Baltimore, MD, Washington-Reagan, Dulles, VA, Anchorage, AK, and other
airports;

United States Senate; mainly US Senators: Kennedy; Kerry; Schumer;
Dodd; Bailey Hutchinson; Cornyn; Durbin; Bond; McCaskill; McCain; Kyl;
Feinstein; Boxer; Specter; Begich; Murkowski; Cardin; Casey; Reid;
Ensign; DeMint; Graham; Gillibrand; Grassly; Harkin; Klobuchar;
Martinez; Nelson; Murray; Rockefeller; Udall; M. Udall; Hagan; Shelby;
Sessions; Alexander; Corker;

United States Congress, mainly Nancy Pelosi; Lloyd Doggett; Patrick
Kennedy; the congressional offices for Austin, TX, Fresno, CA, San
Francisco, San Mateo, San Diego, Sacramento; Houston; San Antonio;
Dallas; Seattle; Philadelphia;

FOREIGN ENTITIES
British Foreign Office; Prime Minister Gordon Brown; Luxembourg
Consulate; Luxembourg's ruler; German Consulate; Angele Merkel; India
Consulate; India's Prime Minister; Luxembourg ambassador;

<u>HOSPITALS AND DOCTORS; UNIVERSITITES</u>

Stanford University; Mills-Peninsula Hospital; Sequoia Hospital; Kaiser Hospital; Community Medical Providers of Fresno; UCSF; UC-Berkeley; UT-Austin; Fresno Pacific University; Fresno State University; University of Missouri; and others have caused Plaintiff and her minor child to suffer personal injury and financial damages due to their actions, which are mainly the lack of usual and customary medical care, medical malpractice, the giving of prescriptions and medical devices that have harmed both Plaintiff and her minor child

<u>LAW ENFORCEMENT; POLICE, FIRE, EMS; SHERIFF; TRANSIT POLICE</u>

Plaintiff believes that they instructed and coordinated actions against Plaintiff and her minor child that extended to the sheriff, fire, EMS, and police departments of Fresno, CA; San Francisco, CA; Sacramento, CA; Los Angeles, CA; Berkeley, CA; Stanford, CA; San Mateo, CA; South San Francisco, CA; Austin, TX; Houston, TX; Dallas, TX; Baltimore, MD; Washington, DC; Anchorage, AK; Seattle, WA; and other jurisdictions. This also includes transit police for the above-named jurisdictions. On August 6, 2009, at a Washington DC Metro Rail station, a transit agent would not give Plaintiff information on how to find a location that Plaintiff had to get to quickly. After Plaintiff got upset, people were sent after her who sprayed her with substances that made her drowsy.

<u>PRIVATE CONTRACTORS</u>

Plaintiff wishes for this FTCA claim to extend to contractors for the above-named federal agencies such as Blackwater or XE; Securitas Personnel; Covenant Personnel; the US Marshals contractor; the TSA contractors at the airports of SFO; AUS; DFW; DCA: BWI; OAK: ANC; Phoenix; San Diego; Denver; and other locations. Plaintiff feels that they acted as federal agents and their actions resulted in damages to Plaintiff and her minor child. They gave Plaintiff food and drink that caused her bodily injury; they conducted search and seizure of legal documents, so that she could not be successful in litigation. Also included in this is David Robert McBrien of Fresno, CA, who may be a

private contracted government employee, his father, James Robert McBrien and his mother Natalie Johnson McBrien of Las Vegas, his brother Russell James McBrien of San Francisco, his brother Richard McBrien of Fresno, CA; and their relatives. David R. McBrien knowingly failed to disclose the fact that he may be gay or bisexual, even after being asked in 1985 by his former wife, the Plaintiff in this action. This has resulted in fear of future disease for both her and her daughter. The failure of the military or federal agency responsible for overseeing this defendant and their negligence resulted in this claim for damages. Therefore, negligence is a cause of action.

STATE GOVERNMENTS

Plaintiff also feels that the orders and actions described in this complaint also extend to the state governments, their governors, and their attorney's general of the states of: California; Gov. Schwarzenegger; Texas; Gov. Perry; DC; Alaska; Illinois; North Carolina; South Carolina; Pennsylvania; Arizona; New Mexico; Nevada; Colorado; Florida; Connecticut; New York; Gov. Patterson; Washington; Iowa; Hawaii; Missouri; and other states where Plaintiff has lived, or has relatives that currently reside there, or has ex-relatives that reside there. The order, however, may extend to all states for action against Plaintiff.

TRANSIT SYSTEMS

Further, Plaintiff feels that this also has extended to transportation systems and their transit police, sheriffs or other law enforcement personnel of: MUNI of San Francisco; SamTrans and CalTrain of San Carlos, CA; FAX of Fresno; BART of Oakland, CA; Capitol Metro of Austin; Metro Rail of Los Angeles; Metro buses and subway of Washington D.C.; MTA of Baltimore, MD; and the municipal bus and rail systems of the same cities named above that refer to the police departments.

Case 3:09-cv-00167-TMB   Document 1   Filed 08/10/09   Page 6 of 25

## AIRLINES

In addition, Plaintiff feels that this claim extends to airlines, for if they were instructed by TSA, DHS, FAA or federal security directors or others, they also bear some responsibility for the seizure of her legal documents and the destruction and continual damage to her luggage.

The airlines are: Southwest; US Air; AirTran; Virgin; Frontier; American; Alaska; Continental; Delta; and United. Their personnel have treated Plaintiff in an openly discriminatory manner, with engaging in conduct against her so that a report against Plaintiff could be made. They have also served food and drink to Plaintiff that caused her to have an instant headache and burning throat and stomach. It also caused Plaintiff to experience perspiration all over her body immediately after ingesting. Those symptoms, Plaintiff was told by a Poison Control doctor, reflect wither a poisonous substance or from a tranquilizer being given to Plaintiff. Plaintiff has lost numerous legal documents and been bumped off flights as recently as this past February. On a Southwest flight from SFO to Austin, Plaintiff had possibly an air marshal sitting next to her. He said, "What do you care if you're being surveilled if you're doing nothing wrong? Why don't you go and live by yourself in a remote area somewhere?" Plaintiff was also told to go and live in a remote area in a Berkeley hostel last year by a purported university researcher from Louisville, KY.

## UNIVERSITY CAMPUS POLICE; JTTF OPERATIONS

Plaintiff has been seriously portrayed so that she received police and bomb squads on the campuses of UC-Berkeley, Stanford, and UT-Austin, with helicopters flying overhead, after the people surveilling her called in wrongful reports about her and her briefcase of legal documents. Plaintiff wonders whether she has had this done to her by JTTF, ATF, DHS, DOD, or another entity.

OIL COMPANIES; ROOFING FIRMS; MANUFACTURERS; PHARMACEUTICAL COMPANIES; OTHER CORPORATIONS

Plaintiff also feels that this suit includes the businesses of T-Mobile; Yahoo; Chevron; Exxon-Mobil; ABC Supply Co., Inc.; Owens-Corning Fiberglas; Flintkote; NeuroPace; Pfizer; DuPont Pharmaceuticals; Adjunct LLC; and other entities yet to be named, that perform in conjunction to federal studies, grants, contracts, or other governmental research.

CHURCHES, CHURCH GROUPS

Further, Plaintiff feels that this includes counterintelligence and surveillance by federal agents from FBI, CIA, DOD, military intelligence; DHS; NSA; and other agencies who enlist personnel from churches, organizations and possibly religious societies to spy on people, collect information on them, sabotage their reputation, make things go wrong, and affect them severely financially. The churches include: the Episcopal Church of New York City; Mennonite Brethren Church of Indiana; Jewish; Baptist Church; Church of Latter-Day Saints of Salt Lake City; and other churches that have performed interference and surveillance of Plaintiff and have negatively also affected her minor child. Some of the priests involved have also worked for oil companies in the past. Plaintiff wonders whether this is surveillance that was authorized by Pres. Bush, Obama and VP Cheney and Biden against Plaintiff, and possibly has been the FBI or CIA. Plaintiff wonders whether it has been COINTELPRO, conducted by the FBI against her, or JTTF performed by the CIA or a CIFA group from the DOD or a group from DHS and TSA.

Their actions have included search and seizure of her legal documents, personal identification, checkbooks, and mail; wiretapping; surveillance equipment in her car, home, apartment, hotels or wherever she stays; wrongful accusations and portrayals; defamation pursuant to these portrayals; detainment; surveillance and eavesdropping; causation of things to go wrong in financial, medical, educational, housing, employment and other areas of her life; being precluded from usual and customary assistance in all areas, including legal, medical,

educational, financial, employment, housing, transportation; and other areas; intentional discrimination, due to Plaintiff's ADA-recognized disability; intentional infliction of severe emotional distress, to try to cause harm to Plaintiff; performing counterintelligence field operations, which have included trailing and shadowing Plaintiff to wherever she goes and telling people not only to assist her, but also to treat her wrongfully, discriminatorily, and even harm her; and other actions.

Plaintiff feels that she has been wrongfully portrayed as someone that she has not ever been by the agencies and entities named in this suit and has had damages resulting from the actions of the agencies and their personnel named herein this suit.

FEDERAL ORDER

This section is about a possible FBI, DHS, DOD, DOJ, NCIS, NSA, CIA, JAG, or other order issued against Plaintiff and her child in 2001.

In October 2001, after Plaintiff and her ex-husband, David McBrien had a terrible fight where they said angry words to each other, her ex-husband and his brother went to Washington DC and may have obtained some sort of order against Plaintiff, one that has severely restricted and affected her and has resulted in everything going wrong for her and her child. Her ex-husband's relatives told Plaintiff that they worked in the legal department in San Francisco FBI, so any tort claim filed there would be one that they would potentially handle, so Plaintiff filed the request here. Also, if Robert Mueller or another Washington DC official issued an order against Plaintiff, it would have come from the DC office and the San Francisco field office. Plaintiff requests discovery of this order, for it more than **likely** will reveal what the nature of the order against Plaintiff has been that has severely and negatively affected her and her minor child for many years. Their lives have been ruined and professionally sabotaged, with much abuse occurring. Her ex-husband told Plaintiff that he could do anything to her that he wished because he'd already told everyone that Plaintiff was "nothing but a

whack job" and that no one would believe her or assist her, and if she complained about how badly she and her minor child were getting treated, it would only get "much, much worse" for the. Whatever this order has been, it has precluded Plaintiff and her child from the freedom to pursue happiness, usual and customary assistance, and has isolated and weakened them in all areas of their lives. No one has this done to them for no reason by law enforcement and others without an agreement to do so by a federal agency.

In June 15, 2009, when Plaintiff went to SFO to ask about whether she was on a list or about why she has had search and seizure or been searched and bumped off flights continuously, she was wrongfully detained by SFPD, who did not give her access to any lawyer. This was done intentionally to damage Plaintiff and to protect the SFPD from any suit for liability of their actions taken against Plaintiff. In March 2009, a SFPD officer told Plaintiff that she should think about ending her life. This is considered to be a wrongful act by a police officer, but it made Plaintiff understand the motivation of the various law enforcement that have been mistreating he. Plaintiff feels that they wish for her life to be over, and have wrongfully framed her as being someone that she has never been, in order to justify actions taken to end Plaintiff's life.

In July 2009, when Plaintiff went to the San Francisco ATF offices to deliver a FOIA request and to speak with an agent about this matter, she was told, "You're a nut. I'm not going to process any request. Now hit the bricks or I'll have you arrested." When she went to the SF FBI office to request information, she is either treated derogatorily, as if they don't care, or is told that she cannot have information regarding her file. When Plaintiff called DHS last year after not having any FOIA request honored for 2 year, she was told, "If you want to know why all of this is happening to you, you'll have to hire a lawyer, perform a FOIA request, go to court, and see if a judge will tell you."

Plaintiff, for most of her life, especially the past few years, has had defamatory, discriminatory, and serious allegations made about her which have resulted in the above-named actions against her as well

as actions taken to threaten and order an end to Plaintiff's life, in a wrongful death action against her. Plaintiff was told recently to purchase life insurance, for she may be passing away soon or have an accident soon; that if she inquired too much about her relatives, this situation or why this was transpiring against her, that "curiosity killed the cat"; she had a car drive by with the words "R.I.P. JR" written on it; had Securitas Personnel on a rail system mention that one should live for today, because tomorrow could be their last day alive; and was approached by a man on Caltrain who talked about a woman who was viewed as a security risk on trains, buses and roads, who came down with a mysterious stomach ailment that no one could determine. Plaintiff has also had recent things of a negative nature done to her on Anchorage transit when she first visited 2 weeks ago.

<u>RELATIVES EMPLOYED BY US GOVERNMENT OR FEDERAL CONTRACTORS</u>

   Plaintiff has adversarial relatives David McBrien of Fresno, CA James Robert McBrien of Las Vegas and Russ McBrien and Ben Gardner of San Francisco that have a risk management firm called Adjunct LLC that is operated out of Las Vegas and who may have a federal, state or local contract to provide risk management services to governmental agencies. Plaintiff wishes for this claim to include this entity, as it may have provided false risk analysis of Plaintiff to federal, state and local transit, fire and other agencies so that she is viewed as a risk and is treated the way that she has been. She has more adversarial relatives, who have been in the US Navy and may have ordered these actions against Plaintiff, and who may be part of biomedical or other research. Their actions have included setting up false offers of employment, marriage, and friendships, where the parties involved intentionally deceived Plaintiff that they ever intended to do anything beneficial for her. Another relative has worked in the past few years for the US Forest Service and Fire/EMS departments in California, and may have intentionally portrayed Plaintiff as someone that would do harm. Plaintiff has had surveillance from US Forest Service, and could not figure out why until recently.

Plaintiff has been told by a purported military man that she and her child are possibly human subjects of research, possibly that of biomedical, biogenetic, or other, and it has caused Plaintiff and her daughter to have severe, unusual personal injuries to their bodies. They have unusually extremely loose joints, so loose that their bones stick out and pop out, from years of being given medications or substances that caused this to occur. Plaintiff's daughter has her knees, legs and ankles dislocate with little to no problem. Their teeth are yellow, and their hair falls out. They have also experienced an inability to concentrate. A woman approached Plaintiff and said, "Don't you wonder why you have always looked so young?" Plaintiff now wonders if she has been given something for this to have occurred.

In the Church Senate Committee hearings of the 1970's, it was discovered that the DOD, FBI, CIA and others had used people as subjects of research for experimentation on them without their knowledge or consent. Plaintiff and minor child also had delays in growth and development, and may have been given steroids to achieve this. This may be due to their families being involved with life sciences research, brain behavioral research, forensic, and other genomic research, such as that conducted at Stanford. It also may be due to federal agencies such as FBI, Dept. of State, DHS, NCIS, or any of the above-named agencies and entities named in this suit, who are known to have conducted such research.

The military, DOD, Navy, Army, ONR or other agency, may have enticed and deceived Plaintiff into a marriage that has turned out to be a false offer and one where it is now apparent that her husband and his family only had the intent of harming her the entire marriage and with any pregnancy, possibly to receive a reward for it from the federal agencies listed in this complaint. Thy also may have done it to use her and her child for testing of pharmaceutical drugs, for which they may have made lots of money from. Plaintiff does not know, but has been given recent hints that this may be a homosexual naval biomedical genetic research group from NSF or ONR, that Plaintiff has never been informed of, but if true, would have possibly exposed her to HIV/AIDS or given her fear of HIV/AIDS for the rest of her life.

Her ex-husband's father, James Robert McBrien was in the Navy in the Korean War and her brother in law, Roger Hull, was in the Navy in the SPAWAR program, one that Plaintiff understands possibly performs biomedical research. Her brother in law lives in Anchorage, and her ex-husband went to Anchorage in 2006 to receive a "bonus from his employer" after their divorce trial was finished. His firm, ABC Supply, does not have a branch in Anchorage. Plaintiff wonders whether her ex-husband may have been a federally-contracted employee all this time. JR McBrien warned Plaintiff to stay in her marriage. Her ex-husband always told Plaintiff that she had "a great body," but paid little attention to her as a person, especially in the last 2 years of the marriage, after obtaining the order in 2001. Plaintiff now wonders if it was because her body may have been filmed and put onto the Internet, or because it may have been used for research, or both. Plaintiff awoke one night to find a camera set up to her ex-husband's computer in their bedroom.

Plaintiff's lawyers did not perform for her. Each lawyer and judge that she has been referred to has had a conflict of interest, where they were in the military, life sciences, had asbestos or oil industry as a client, or were possibly gay. Many of the lawyers that she retained now have enhanced law practices, possibly after receiving rewards from the federal government for actions taken against Plaintiff, by not performing for her.

Plaintiff was introduced to her ex-husband by her father, who had him as his Owens-Corning Fiberglas client in the roofing business. Her father was in the Army. Flintkote, James McBrien's former employer, may have been Pillsbury's client, Plaintiff recently learned. All of these family members may also be part of a group such as OSS, FBI SIS, or military intelligence. They are highly intelligent and do not care for Plaintiff or her minor child, as Plaintiff has a disability and her minor child had developmental delay. They may have only been interested in Plaintiff in order to preclude an asbestos claim. They may have arranged for Plaintiff to be used for brain behavioral research by neurologists and patents invented by them at Stanford, Mills-Peninsula and the other hospitals that are named in this suit.

PLAINTIFF'S FTCA CLAIM- 13

DOD, FBI, CIA, NCIS and police departments are all known for
conducting such studies. A SF FBI duty agent said to Plaintiff in
January 2008, "I suppose you're going to tell me that we can read your
brain." Plaintiff had not even brought the subject up, but his stating
this to Plaintiff made her wonder whether she has been the subject of
FBI brain behavioral research without her knowledge or consent,
pursuant to an order of some type, and may have involved the Navy,
Seattle Police, SFPD, and other law enforcement forensic studies, a
patent, and a brain device developed by NeuroPace by a neurologist at
Stanford. Plaintiff was told by a neurologist that hand-held devices
operate these devices, and could be the reason that Plaintiff has felt
different brain stimulations from people surveilling her with these
hand-held units.

The California AG has had a deputy AG named Catherine McBrien,
whose address was the same as that of Pillsbury, Winthrop in San
Francisco, and she may have been a relative that set up things to go
this way. There is also a McBrien that was in the US Treasury Dept.
and another in Naval biomedical research as well as one in NIH Cancer
Center. Many relatives have recently had cancer and Plaintiff wonders
whether this is a cancer research group, or a group that is allowed to
give people carcinogens to cause them to get cancer. One of
Plaintiff's attorneys, when Plaintiff and her child felt that her ex-
husband was giving them drugs and substances that gave then=m severe
headaches, said that anyone who would drug and poison someone to death
was called a "silent killer."

Plaintiff wonders whether she has been victimized by agencies
that have authorized her to be harmed through different drugs,
substances, and devices to harm her and/or kill her, due to their
wrongful portrayal of her, involving serious allegations. Recently
Plaintiff was told on mass transit bus in San Francisco that she
should drink more water, because lack of water can mean a heart
attack. Last night, after Plaintiff had dinner, in Washington DC, her
legs began to severely cramp a few hours later and this continued for
much of the night. An attorney who represents the disadvantaged and
disabled in another jurisdiction recently told Plaintiff that

sometimes, it can occur that certain people that law enforcement do not want can pass away suddenly of a heart attack or stroke. Plaintiff seriously wonders, with all of the things that she has been given, giving her unusual injuries, whether she is a subject of this type of action, and whether this is due to military surveillance, a private contractor, Homeland Security, DOT, as it happens much on mass transit, or other. Or if this is due to David McBrien, his family, Adjunct LLC, ABC Supply Co., Inc., or other parties connected to them, that "RPI JR" meant that Bob McBrien has meant to harm or kill Plaintiff. Plaintiff further wonders whether it involves a brain device that is patented that the McBriens have an interest in or have created.

Plaintiff feels that the McBriens have committed felony child abuse against her minor child by giving her child substances that have harmed her; from a lack of care from not taking her to the doctor for injuries; encouraging her to commit wrongful acts, so that it could be used against her; feeding her fattening and sugary foods, so that she is now overweight and could develop diabetes or the disability that Plaintiff has; and from having her miss much school, so that she failed and was seen as truant. She also suffers from sleep deprivation and is being given Melatonin, possibly as part of a study or patent, by the entities named in this claim. Her child would tell Plaintiff that she was home feeling dizzy and sick again, but Plaintiff could get no assistance. When Plaintiff has gone to HHS, CFS, CPS, and other agencies in DC, California, and Texas to report abuse, nothing is ever done to stop it, as the agencies involved are worried about an investigation, especially in Fresno and San Francisco. Plaintiff and minor child ran away from her ex-husband in 2004, only to receive no assistance, and no entry into any domestic violence shelter or any TRO. Plaintiff came to DC in March 2009 to talk to HHS, Child and Family services, DOT, and others about this situation, but was only threatened with arrest. Plaintiff is worried that her daughter has been given steroids to sterilize her and masculinize her, if the McBriens are doing it for gay diversity biomedical research.

Plaintiff was given wrongful offers of employment with ABC Supply, Clovis Unified School District, and Pillsbury, Winthrop, that Plaintiff recently realized were never true offers of employment but rather offers where relatives and others that worked there or had contacts there, could negatively affect Plaintiff and her child and her employment future. Pillsbury, Winthrop, in fact, may have had a contract with the California AG, DOJ or FBI, to hire Plaintiff in order to investigate her at the same time and to have things go wrong for Plaintiff from clients of their firm, such as the City of San Francisco, Stanford, Citibank, British Foreign Office, DOD, FBI, CIA, and others. Plaintiff only recently learned of this possibility, and that she also may have been hired so that it precluded a lawsuit against the State of Hawaii for asbestos exposure.

Plaintiff has been discriminated against in housing wherever she goes, so that no one wishes for her to stay there, and do intentional, discriminatory acts against her that force her and her child to leave. Plaintiff wonders of the IRS, FBI, TSA, DHS, DOJ, or other federal agency has made this occur. This occurred in Austin, and each apartment that they moved to had the same-sized hole carved into the ceiling after Plaintiff moved in. In one apartment in Austin, a roofer fell through the ceiling, and it spewed asbestos-containing ceiling material that destroyed all of Plaintiff's and minor child's belongings, as well as gave them a toxic exposure to asbestos. When Plaintiff called the EPA, Texas State Dept. of Health, and the CDC, she did not get correct information nor any follow-up on her claim. In fact, plaintiff feels that much of the surveillance against her has been from parties not only interfering with filing of lawsuits, but also the filing for any asbestos claim for her and her daughter. The agency ordering this surveillance may ha been the police, FBI, IRS, DHS or others named in this suit. No one usually has holes carved into the ceilings of their apartments each time unless they're being surveilled. Surveillance equipment was discovered in Plaintiff's home in Fresno as well as in her car. Plaintiff feels that she has been surveilled and possibly filmed, by her ex-husband and others, but when she has asked for help from a private investigator, police or FBI, she

did not receive any. Plaintiff regularly receives intentionally rude and discriminatory conduct from hotel wonders of Indian descent in California and elsewhere, and she wonders whether the State Dept. or the India Consulate ordered this.

Plaintiff requests this court to assist with a FOIA request for discovery about this matter, as the agencies that Plaintiff has contacted will not assist her.

Plaintiff makes this FTCA claim under 28 USCA 2680, 1346 and all other applicable federal statutes.

Plaintiff further makes this claim against the new administration members of Robert Mueller, Robert Gates, Janet Napolitano, VP Joe Biden, Leon Panetta, Hillary Clinton, Eric Holder, Pres. Barack Obama, and others, for their part in the withholding of information and their actions whereby they may have signed an order against Plaintiff, one that precluded her and her daughter from all usual and customary assistance, and one that was transmitted down to all levels of government for action. Plaintiff was told that it wouldn't matter where she moved to, that this order would follow her to wherever she went. It has, and Plaintiff feels that it has been severely damaging, wrongful, resulted in mass torts and litigation and personal injury, and has also been defamatory, portraying Plaintiff in ways that she never has been, in order to justify the continued governmental surveillance and investigation.

Plaintiff also makes this claim under the ADA statute, 42 USCA 12100 et seq, as she has a disability and feels that she and her daughter were used for research due to her disability. Plaintiff definitely feels that all parties named in this action have taken advantage of her as a person with a disability, one that takes her longer to understand matters, especially if being given involuntary medication and treatment.

Plaintiff also makes this claim against Amtrak, as they have performed search and seizure of her legal documents, the last time being on 1/31/09, and it has had severe financial consequences for her. Stolen from Plaintiff was her purse, which contained her driver's license, checkbooks, cards, and flash drives and legal and financial

documents. When Plaintiff requested that the Fresno Amtrak personnel assist her and make a report, they refused. When Plaintiff asked the Fresno police for assistance to file a report, their dispatcher told Plaintiff that if they had seized her purse, then she would not get anything back until the investigation was over. When Plaintiff spoke with Fresno police, they told her that they did not believe her. Plaintiff does not know whether they took a report as she requested or not. As a result, Plaintiff may have experienced identity theft and had debts attributed to her from this. Plaintiff wonders whether this has been a form of asset forfeiture by the government against her. In May or June 2009, while Plaintiff was on Amtrak, a man and the Amtrak bus driver wanted to know if she knew how to get to Reno, NV. Plaintiff called Amtrak and greyhound to assist the man. Plaintiff had been there once previously to see about filing a lawsuit for asbestos exposure. The man said that he used to work for Circus, Circus casino. On a subsequent Amtrak and San Francisco MUNI bus, there was also a Circus, Circus man onboard sitting near Plaintiff. Plaintiff wonders whether her information was used by someone to go to Circus, Circus, and whether Amtrak helped to arrange this, perhaps even with Senator John Ensign, whose family is in the casino business. Plaintiff has never been a gambler, but feels that this is part of an attempt with wrongful accusations, as well as possible debts that Plaintiff may now have. Amtrak personnel have yelled at Plaintiff; intentionally misplaced her bags; damaged her bags, where one driver placed Plaintiff's bags in San Francisco in a pool of urine on the street while he placed the other patrons' bags in another area, and where they usually damage her zippers, wheels, and rip her bags, so that she has to replace them. They rarely if ever return any emails that Plaintiff has sent about this. Any complaints about them are met with retaliation.

Plaintiff also makes this claim against the airlines named in this suit, for they have assisted the federal and other agencies named in this suit with the search and seizure of her legal documents; of wrongful detention and bumping her from flights and from marking her tickets with "SSSS" so that she would be additionally searched and

miss her flight; of yelling at Plaintiff and intentionally causing incidents so that Plaintiff would be made an example of in the worst possible way and suffer damage to her reputation; and of serving her food and drink that sickened her, allowing her only food or drink from certain locations or containers that they had set aside for her to have. Plaintiff was yelled at in front of all of the passengers on an American Airlines flight in early 2009, when she was trying to fly from SFO to DCA for pursuit of this legal matter. She was bumped off her connecting flight in Boston, and had to take a bus to DC instead, which took all day to occur. Plaintiff also feels that she has been involuntarily medicated aboard these flights, as she feels that she was on July 29, 2009. On July 21, 2009, when Plaintiff flew from SFO to DC through Las Vegas, a man tried to implicate her as being a threat to the CIA and a US senator. On her flight on July 29, 2009, a woman tried to implicate Plaintiff as a political protester, something that she has never been. This may be a violation of the Hatch Act, where people who have been involved in politics get things done to them in an adversarial way.

The hospitals named in this suit committed intentional medical malpractice against Plaintiff, possibly at the direction of the agencies named in this claim for damages, and may also have been using her as a subject of medical study or research without her knowledge or consent. Plaintiff has had one thing after another go wrong, especially with her pregnancies, at the hospitals named in this suit. She and her minor child have been given treatment and medications that have harmed them. Some of the medications have lawsuits against them for damages and some have been taken off the market. Recently, in June 2009, Plaintiff was recommended 2 medications that have had lawsuits for adverse side effects. If this is due to the actions of any of the other federal agencies listed in this suit, Plaintiff wishes for this court's consideration of that, as they may have precluded Plaintiff from having more than one child and having considerable difficulty and distress while doing so, where she and minor child nearly died while she was giving birth.

Plaintiff named the police, sheriff and fire departments in this claim, for they have done nothing to keep her and her daughter safe from domestic violence, and have continuously harassed Plaintiff, not taken reports, not enforced the custody order, labeled and called Plaintiff names, suggested wrongful acts such as Plaintiff ending her life and trying to drive her to suicide, wrongfully detained Plaintiff when she asks for FOIA requests for records, search her car, apartment, home, hotel, and take legal documents, tried to implicate her in things she ahs nothing to do with to frame her, and threatened her with arrest or detention whenever possible. They have labeled Plaintiff with terms that Plaintiff has never been called or diagnosed as before. Illinois policeman Drew Peterson was able to get away with many years of purported abuse of his former wives through similar methods to what has been done to Plaintiff. Plaintiff was told by a San Francisco lawyer that if law enforcement felt that Plaintiff was dangerous enough, they'd just kill her. Plaintiff wonders whether there is an order for wrongful death that has been issued against her. Their and other's actions have denied Plaintiff EAEJ, even though this may be a criminal matter.

Plaintiff now wonders whether it was all set up all along by the parties named in this suit to go this way against her and her minor child.

LEGAL REFRENCES

Plaintiff not only makes this claim under the FTCA, 28 USCA, but also cites the ADA 42 USCA 12101 et seq. federal statute, as she feels much of the actions taken against her resulted from her having a disability and have been intentionally discriminatory against her. Much of involves police misconduct and may involve 42 USCA 1983 civil rights violations. Most of this claim for damages results from personal injury from the actions taken against Plaintiff by the agencies and entities named in this complaint.

DAMAGES

Plaintiff requests damages of an unspecified amount at this time, to be determined after full discovery.

REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury.

REQUEST FOR ATTORNEY'S FEES, COSTS OF COURT

Plaintiff wishes to recover any costs associated with having to pursue this matter.

REQUEST FOR WAIVER OF FEES, FILING IN PRO PAUPERIS

Plaintiff requests a waiver of fees and has submitted an IFP application to this court last February, in another matter. Plaintiff requests that IFP application be applied to this filing and allow Plaintiff to not pay the filing fee.

REQUEST FOR PROOF OF SERVICE

Plaintiff requests this court to provide service to the defendants named in this suit, due to the dwindling funds and debts that Plaintiff now has.

Plaintiff wishes for this claim to be accepted so that she can have redress for the injuries she suffered from the actions of those agencies and individuals.

Dated this August 7, 2009,

*Karen McBrien*

Karen McBrien, In Pro Per

DECLARATION

Washington DC

District of Columbia


    1. I am appearing as pro per in the above-entitled action. Plaintiff has been suffering due to medication sickness.

    2. I request this Court to file this FTCA claim for damages, without payment of fees, as I have submitted an IFP application for review and been granted IFP application in this court on 2/3/09.

    3. I have amended this claim by adding an additional cause of action in this claim against my ex-husband, David McBrien, his father, James R. McBrien, his brother, Russ McBrien, the Fritzes, the Shepards, his other relatives, and Roger Hull of Anchorage, AK, who was in the Navy, his relatives, and the Welters.

    4. I also wish to request more time to file this claim, so that it is not time-barred by statute of limitations.

    5. I have attempted to contact the agencies to discuss this action, but has not been able to reach them. They will not disclose information, deliberately denying her access to any and all of her files.

    6. I would have filed this claim sooner, and had a more perfected claim, but I cannot get anyone for assistance who will give me correct advice or perform for me or who even wants this matter now. Most attorneys, now that my case and reputation are so damaged, only want great sums of money to even consider any action. I request appointment of counsel by this court, as this may involve a criminal DOJ or other investigation, and I may have to file for bankruptcy soon.

7. An order was given against me by an agency or official or judge or whatever entity it has been, it has been precluded me from all assistance and it has negatively and severely affected all areas of my life, resulting in physical, financial and permanent damage to her body, brain, joints, reputation, credit, and finances.

8. Once again, I recently lost valuable legal papers to search and seizure and theft, as I have in the past, due to theft, possibly by parties opposed to my efforts in litigation, and maybe even from the efforts of some of the defendants listed in this action. Prior to this, I have also lost legal documents due to search and seizure conducted of her luggage at airports, train stations, bus stations, and from her rental car and hotel rooms. A recent encounter at SFO, Plaintiff was told by could seize any of her legal documents that they wished. Seizure of documents last December 2008 on Virgin Airways cost Plaintiff $1100-$1300 in lost appellate court transcripts.

7. I strongly feel that I and my daughter have valid federal claims for damages that are properly heard before this court. I do not wish for this action to be dismissed. I feel that I was intentionally misled by different parties, so that I would no longer have this action. I should have been filing this claim here due to the federal agencies here and the diversity of jurisdiction. I also filed it here because the decision that my ex-husband came to get was obtained in Washington D.C.

8. I wish for this court to understand that I have committed excusable neglect of this matter, as I have no knowledge of FTCA claims, and have had numerous legal matters occurring in four jurisdictions, at roughly the same time, with pleadings due in each at around the same time. I still have appellate matters for DC as well as

involving my divorce in California to attend to and have been
preparing for it. I apologize to this court for not having more
closely attended to this matter.

9. This is requested in the furtherance of justice, not to delay
matters before this court. This claim is meritorious and involves
public interest issues.

10. I have been suffering due to my disability, a change in the
medication for it, and feel that parties took advantage of me in
extenuating circumstances and due to my disability. I strongly feel
that my disability has been used against me to deny me assistance,
preclude me from any support, and characterize me in a false and
defamatory manner so that parties would not only not wish to assist
her, but also sabotage her efforts at being successful in this action.

11. I have felt that the defendants in this action have had an
unfair advantage and may have been involved in me and my minor child
being precluded from assistance all along.

12. I have also strongly feel that I have been denied equal
access to equal justice, due to the lack of assistance that I have
received, even though I have retained attorneys and visited many legal
offices for assistance, I did not receive any that was beneficial.


I hereby state that I believe that the foregoing is true and correct. I
am over 18 years of age, and if called upon, could testify to the
contents of this document and the facts alleged in it.

Dated: August 7, 2009

Subscribed and duly sworn to before
me by above-named applicant, this
_28_ day of _August_, _2009_
at Washington, D.C.

KAREN MCBRIEN

Leslie R Kim
Notary Public, District of Columbia
My Commission Expires 8-31-2009

PLAINTIFF'S FTCA CLAIM- 24




UPS NEXT DAY AIR
TRACKING #: 1Z 7R7 W29 01 9761 7993

ANCHORAGE AK 99513-7564

AK 996 9-13

1

SHIP US DISTRICT COURT OF ANCHORAGE
TO: STOP 4
222 W 7TH AVE

KAREN MCBRIEN
(512) 586-8978
THE UPS STORE #0740
1718 M ST NW
WASHINGTON DC 20036-4504

SHP WT: LTR
DATE: 08 AUG 2009
LTR 1 OF 1

BILLING: P/P

ISH 10.00 E2044 93.5A 07/2009

UPS Ground
UPS Standard
UPS 3 Day Select℠
UPS Worldwide Expedited®

Apply shipping documents on the side.

US DISTRICT COURT OF ANCHORAGE
222 W 7TH AVE
STOP 4
ANCHORAGE AK 99513-7556

NORTH SIN
04B-1069
1Z7R7W290197617993

...no weight limit for envelopes
...ence, urgent documents, and
...ay Air service is selected, UPS
...her than those listed above are
...the applicable weight.

...led for shipments of electronic media
...ion.

...o send letters weighing over
...nd Day Air services, UPS Express
...e are subject to the corresponding

...xpress Envelope may be used only
...e. There is no limit on the weight

...42-5877) or visit **ups.com**®.

...ess Envelope

...this envelope a second time —
...ship to another recipient.
...above.

...nmental platform, reflecting
...ess practices worldwide.
...nade from 100% recycled
...nd recyclable.